**Bernita WASHINGTON, et al.**

v.

**CSC CREDIT SERVICES, INC. and Equifax Inc.**

**CIV. A. No. 97–0971.**

United States District Court, E.D. Louisiana.

July 8, 1998.

---

310

John Gregory Odom, Stuart E. DesRoches, Ladson, Odom & DesRoches, Dawn Adams Wheelahan, Dawn Adams Wheelahan, Attorney at Law, New Orleans, LA, for Plaintiffs.

Jefferson Randolph Tillery, Jones, Walker, Waechter, Poitevant, Carrere & Denegre, New Orleans, LA, for CSC Credit Services, Inc.

Alexander McVoy McIntyre, Jr., Locke, Purnell, Rain & Harrell, New Orleans, LA, for Equifax, Inc.

Amelia Williams Koch, Matthew Kepner Brown, Phyllis Guin Cancienne, Locke, Purnell, Rain & Harrell, New Orleans, LA, for Equifax Credit Information Services, Inc. named Equifax, Inc.

## ORDER AND REASONS

BERRIGAN, District Judge.

This matter is before the Court on a Motion for Reconsideration by defendant CSC Credit Services, Inc. ("CSC") (Record Document No. 49), and a Motion for Reconsideration, by defendant Equifax, Inc. ("Equifax") (Record Document No. 48), requesting that the Court reconsider its Order and Reasons entered on March 12, 1998 and that the Court deny plaintiffs' Motion to Certify Class. For the reasons below, defendants' motions are denied.

### 1. Motion for Reconsideration

Federal Rule of Civil Procedure 54(b) permits review of a judgment which disposes of some, but not all claims, in an action. A motion to reconsider a ruling on a pre-trial motion, filed within ten days from the Court's adverse ruling, is analogous to motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e). *See Smith v. Compass Rose Services, Inc.,* 1998 WL 92283 at *1 (E.D.La. Mar. 2, 1998). As defendants' motions were filed within ten days of the ruling and the ruling did not dispose of all of the plaintiffs' claims, the motions will be deemed motions to alter or amend [1].

A decision will be altered or amended upon the movant's showing of: (1) an intervening change of controlling law; (2) the availability of new evidence; and/or (3) the need to correct a clear and manifest error of fact or law. *See Russell v. Delco Remy Division of General Motors Corp.,* 51 F.3d 746, 749 (7th Cir.1995); *Southern Constructors Group, Inc. v. Dynalectric Co.,* 2 F.3d 606, 611 n. 16 (5th Cir.1993). Rule 59(e) motions to alter or amend are not the appropriate forum for arguments that should or could have been urged in the original opposition memorandum. *See LB Credit Corp. v. Resolution Trust Corp.,* 49 F.3d 1263, 1267 (7th Cir.1995); *Aybar v. Crispin–Reyes,* 118 F.3d 10, 16 (1st Cir.1997); Fed.R.Civ.P. 59(e). Thus, because the defendants fail to identify manifest errors of law or fact, present new evidence, or specify an intervening change in the law, defendants' motion to alter or amend does not provide sufficient grounds to grant the requested relief.

However, for purposes of clarity, the Court will briefly address the primary arguments raised in defendants' memoranda. Defendants first contend that only the Federal Trade Commission may grant injunctive relief under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681a–1681t ("FCRA"). Second, defendants maintain that the definition of the class certified by this Court is inappropriate because it is circular and prejudges liability. Third, defendants argue that it is impossible for plaintiffs to make out any violation of the FCRA, because the obtaining by insurance companies of written authorizations from consumers forecloses any inquiry into wheth-

---

[1] The tenth day following the entry of the order was Sunday, March 22, 1998. Equifax's motion was filed Monday, March 23, 1998. CSC's motion, filed two days later, is in a strict sense untimely, but as it essentially only seconded the points raised by Equifax, it will be examined here by the Court.

er credit reporting agencies followed reasonable procedures in releasing the reports.

### 2. Private Actions for Injunctive Relief under the FCRA

There is no Fifth Circuit authority as to whether injunctive relief is available to private litigants under the FCRA. There are, however, district court cases from other Circuits which reach opposite results. *Mangio v. Equifax*, 887 F.Supp. 283, 284–85 (S.D.Fla. 1995) holds that such relief is available only to the Federal Trade Commission. *Greenway v. Information Dynamics, Ltd.*, 399 F.Supp. 1092, 1096–97 (D.C.Ariz.1974) *aff'd* 524 F.2d 1145 (9th Cir.1975), on the other hand, found in a class action context that injunctive relief was available to private individuals under the FCRA.

The Court finds that case law, statutory language, and legislative history militate against the *Mangio* position.

■ Absent the clearest command to the contrary from Congress, federal courts retain their equitable power to issue injunctions in suits over which they have jurisdiction. *Califano v. Yamasaki*, 442 U.S. 682, 705, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979). Congress has issued no such contrary command here. Though the FCRA provides the Federal Trade Commission with the power to enforce the Act, it does not state that that power is exclusive. 15 U.S.C. § 1681(s). Moreover, a recent amendment to the FCRA, 15 U.S.C. § 1681(s)(2)-(b)(2)(d), enacted after the *Mangio* decision, provides the FCRA with exclusive enforcement power over another section of the Act, but not over Section 1681e, which is at issue here. Finally, as plaintiffs note, there is legislative authority to the effect that Congress intended the remedies of consumers and the FTC to be complementary, and that consumers should have recourse in court against potential violations of the Act. H.R. 15073, 91st Cong., 2nd Sess., 116 Cong. Rec. 35937 (1970), at p. 35940–41. Thus injunctive relief is available to private individuals under the FCRA.

### 3. Declaratory Relief Under the FCRA

■ Even if private injunctive actions were unavailable under the FCRA, a class action could be maintained for declaratory relief. Rule 23(b)(2) permits a class action where:

> the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Fed.R.Civ.P. 23(b)(2).

The Advisory Committee Notes to Rule 23 state that "declaratory relief 'corresponds' to injunctive relief when as a practical matter it affords injunctive relief or serves as a basis for later injunctive relief." Advisory Committee Notes, Fed.R.Civ.P. 23(b)(2). Here, as a practical matter a declaration that defendants are in violation of Section 1681e(a) of the FCRA would serve as a basis for a later injunctive action by the Federal Trade Commission.

### 4. Definition of the Class

The class definition in the Order and Reasons entered on March 12, 1998, reads as follows:

> all persons whose credit reports have been furnished to an insurance company during the period from April 2, 1995 to the present, by computer access, in violation of 15 U.S.C. 1681e(a), by defendants CSC Services, Inc., or Equifax Inc., or any of their subsidiaries, or by access to databases owned by any of them

Defendants contend that this definition, because of its utilization of the phrase "in violation of 15 U.S.C. 1681e(a)," is impermissible because it is circular and because it prejudges liability. A similar allegation was made in *Forbush v. J.C. Penney Co.*, 994 F.2d 1101 (5th Cir.1993). According to the Fifth Circuit, the defendant there asserted that "this [class] definition is hopelessly circular, as the court must first determine whether an employee's pension benefits were properly reduced before that person may be said to be a member of the class." *Id.* at 1104. The Fifth Circuit dismissed this argument, stat-

ing "[t]his argument is meritless, and if accepted, would preclude certification of just about any class of persons alleging injury from a particular action." *Id.* Thus the fact that the class definition here is defined in terms of a legal violation is no bar.

However, to more clearly demarcate the boundaries of the class, the Court will amend the definition to eliminate the phrase "in violation of 15 U.S.C. § 1681e(a)," as that statutory section requires only that the credit reporting agencies observe "reasonable procedures" to ensure that credit reports are being used for a permissible purpose, and replace it with the specific recommendations of that section as enunciated by the Federal Trade Commission Commentary.

The FTC Commentary calls upon consumer reporting agencies furnishing reports to insurance companies to receive:

1) an initial blanket certification from the insurance company stating:

i) a permissible purpose for which the credit report is sought,

ii) that the credit report will be used for no other purpose, and

iii) that the insurance company is expressly prohibited from sharing the credit report or providing it to anyone else, other than the subject of the report or a joint user having the same purpose.

2) a separate certification from the insurance company for each credit report requested stating that the report was only to be used for a permissible purpose, and

16 C.F.R. Ch. 1, Subchapter F–Statements of General Policy or Interpretation under the Fair Credit Reporting Act (January 1, 1995 edition) (hereinafter "FTC Commentary"), pp. 386, 396–97.

The defendants appear to argue that the FTC recommendations are unreasonably stringent, but that goes to the merits of the claim. It may well be, also, that the FTC Commentary recommendations are unreasonably lenient. Requiring only a perfunctory assurance from an insurance company before issuing a credit report may not be a reasonable procedure. As a reasonable procedure, the credit reporting agencies may be required to actually receive the consumer's written authorization, as is common for disclosures of medical records. These questions, of course, go to the merits of the class action claim. But for purposes of certifying the class, the FTC recommendations provide an objective standard for identifying the class and for setting the stage to determine what "reasonable" procedures are.

### 5. *Independent Duties*

Defendants maintain that it is impossible for plaintiffs to make out any violation of the FCRA, because the obtaining by insurance companies of written authorizations from consumers forecloses any inquiry into whether credit reporting agencies followed reasonable procedures in releasing the reports.

The facts of this case render this contention inapt. There is no evidence in the record that indicates that defendants ever knew whether the insurance companies to whom they were releasing reports had received written authorizations from consumers. Moreover, there is no indication that the insurance companies even represented to the defendants that they had received such authorizations.

Furthermore, the duty of the insurance company only to use reports for permissible purposes is independent of the duty of the credit reporting agencies to employ reasonable procedures when issuing the reports. The fact that an insurance company may have protected itself and the consumers with written authorizations should not foreclose inquiry into whether the defendants independently maintained reasonable procedures in protecting consumer privacy.

### 6. *23(b)(3) Class Action*

■ Alternatively, should it be determined that there is no private cause of action for injunctive relief under the FCRA or that certification under Fed. R. Civ. Proc. 23(b)(2) is otherwise inappropriate, the Court finds that class certification is appropriate under Fed. R. Civ. Proc. 23(b)(3).

Class certification is merited under Fed. R. Civ. Proc. 23(b)(3) if, in addition to the prerequisites of Fed. R. Civ. Proc. 23(a), the court finds that:

the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that the class action is superior to other methods for a fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interests of the members of the class in individually controlling prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) concentrating the litigation of the claims in a particular forum; (D) the difficulties likely to be encountered in management of a class action.

Fed. R. Civ. Proc. 23(b)(3).

Deciding whether common issues predominate and whether the class action is a superior method to resolve the controversy requires an understanding of the relevant claims, defenses, facts, and substantive law presented in the case. *Allison v. Citgo Petroleum Corp.*, No. 96–30489, 1998 WL 244989 at *13, —— F.3d —— (5th Cir. May 15, 1998); *Castano v. American Tobacco Co.*, 84 F.3d 734, 744 (5th Cir.1996).

Citing to cases against insurance companies, defendants maintain that eight separate and individualized inquiries would have to be made for each member of the putative class. However, as described above, the case at hand involves a different set of defendants with a different and independent set of duties. Liability here does not revolve around whether a third party—the insurance companies—obtained written authorizations from consumers or whether there were fraudulent circumstances surrounding the procurement of those authorizations. Rather, it hinges solely on a single determination of fact and a single question of federal law identical to all plaintiffs.

Factually, the defendants' standard procedures with regard to issuing consumer credit reports to insurance companies must be discerned. Did the defendants require that the insurance companies submit actual written authorizations from consumers, or only state-

ments indicating that such authorizations had been obtained? Did the defendants require an initial blanket certification from the requesting insurance companies? What was that certification required to state? Finally, did the defendants require a separate certification for each report, and what was that certification required to state? At this point in time, from its analysis of the record and the case as a whole, it appears to the Court that defendants' procedures were standard and applied uniformly to all members of the putative class. As such, the factual predicate of liability can be determined almost without reference to the circumstances surrounding each individual plaintiff.

As for common questions of law, liability here turns on a single federal question applicable to the class as a whole—whether defendants' procedures for protecting consumer privacy were "reasonable" under the FCRA. The situation here thus differs from that in *Allison*, where individualized factual inquiries were required to determine liability for each plaintiff, and where the issues of liability and damages also overlapped.

In sum, the liability issue is identical for each plaintiff. Thus, for determinations of liability, both common questions of law and common questions of fact easily predominate over those affecting only individual members.

Turning to questions of damages, however, the Court finds that some matters may necessitate plaintiff-specific inquiries. Section 1681*o* of the FCRA entitles consumers to actual damages in the event of negligent noncompliance. 15 U.S.C. § 1681*o*. Section 1681n of the FCRA entitles consumers to either actual damages or to statutory damages ranging from $100.00 to $1,000.00. 15 U.S.C. § 1681n.

■ A finding of negligent noncompliance would entitle plaintiffs to actual damages, and thus perhaps necessitate the ordering of separate trials to determine damages. This possibility, however, even if it were to come to fruition, would not render class certification inappropriate for the issue of liability.[2]

2. Fed.R.Civ.P. 23(c)(4) states:

When appropriate an action may be brought or maintained as a class action with respect to particular issues.

In the event of a finding of willful noncompliance, however, maintenance of a class action through the damages phase of the proceeding would be appropriate. Those few who felt that they possessed large claims could opt out and seek actual damages, and those who did not could remain in the case and seek statutory damages, which could be determined with minimal, if any, plaintiff-specific inquiry.

■ As to superiority, the second consideration in Rule 23(b)(3) actions, the Fifth Circuit in *Castano* in denying class certification stated as follows: "Finally, the most compelling rationale for finding superiority in a class action—the existence of a negative value suit—is missing in this case." *Castano v. American Tobacco Co.*, 84 F.3d 734, 748 (5th Cir.1996). The situation here presents precisely that compelling rationale, and thus poses exactly the type of collective-action problem for which the class action device was devised. Unlike in *Castano* or *Allison*, the plaintiffs here, if successful, will be entitled only to relatively small awards. Only through grouping themselves together can their claims be pursued.

Additionally, even if the damages issues were to be tried separately, which they may not, class treatment of the liability issue will promote efficiency and economy in the overall resolution of the case. Separate trials on an identical liability issue would be wasteful. Also, the Seventh Amendment constraint on separate damage trials raised in *Allison*, 1998 WL 244989 at \*14–18, —— F.3d at ——–——, does not apply as the issues raised in a given damage trial would not overlap either with liability or with the damages trials of other plaintiffs.

■ Lastly, the Court finds that the four considerations enumerated in the latter part of Rule 23(b)(3) also weigh in favor of certification. First, as stated above, the members of the class have little interest or incentive to maintain individual actions due to the paucity of the damages to which most of them would presumably be entitled. As for the second factor, to the knowledge of the Court, there is no other pending litigation brought by the plaintiffs on the matter. Third, concentrating the determination of whether defendants' standard procedures violate the FCRA in one court would avoid the risk of inconsistent determinations. Fourth, the only significant difficulties in case management would arise in the damages phase. Those difficulties either may not arise at all or will be dealt with via separate damage trials. In either case they would not affect certification for liability issues. The Court thus grants class certification for all issues in the case, with the possibility of severance at a later date for separate trials on damages.

Accordingly,

IT IS ORDERED that the Motion for Reconsideration by defendant CSC Credit Services, Inc. (Record Document No. 49), and the Motion for Reconsideration, by defendant Equifax, Inc. (Record Document No. 48), requesting that the Court reconsider its Order and Reasons entered on March 12, 1998 and that the Court deny plaintiffs' Motion to Certify Class, are DENIED.

IT IS FURTHER ORDERED that the class definition in the Order and Reasons entered on March 12, 1998, be amended to read as follows:

> all persons whose credit reports have been furnished to an insurance company during the period from April 2, 1995 to the present, by computer access, by defendants CSC Services, Inc., or Equifax, Inc., or any of their subsidiaries, or by access to databases owned by any of them, where the consumer reporting agency assembling and/or furnishing the report(s) did not receive:

Fed.R.Civ.P. 23(c)(4).
Also instructive are the Advisory Committee Notes to Fed R. Civ. P. 23(c)(4), which state: This provision recognizes that an action may be maintained as a class action as to particular issues only. For example, in a fraud or similar case the action may retain its "class" character only through the adjudication of liability to the class; the members of the class may thereafter

> be required to come in individually and prove the amounts of their respective claims.

Advisory Committee Notes to Fed R. Civ. P. 23(c)(4). Thus liability issues can be appropriate for class treatment even if damages are not, particularly in a case such as the one at hand, where the liability issue is identical for each plaintiff and is independent of damages.

1) an initial blanket certification from the insurance company stating

i) a permissible purpose for which the credit report is sought,

ii) that the credit report will be used for no other purpose, and

iii) that the insurance company is expressly prohibited from sharing the credit report or providing it to anyone else, other than the subject of the report or a joint user having the same purpose, and

2) a separate certification from the insurance company for each credit report requested stating that the report was only to be used for a permissible purpose.

IT IS FURTHER ORDERED that the above class be certified under Fed.R.Civ.P. 23(b)(2), or in the alternative under Fed. R.Civ.P. 23(b)(3).

IT IS FURTHER ORDERED that all issues fairly presented by the Court's Order and Reasons entered on March 12, 1998, and the Order and Reasons issued today, are hereby certified to the United States Court of Appeal for the Fifth Circuit pursuant to 28 U.S.C. § 1292(b).