Bernita WASHINGTON, et al.

v.

CSC CREDIT SERVICES, INC., et al.

No. CIV.A. 97–971.

United States District Court,
E.D. Louisiana.

May 30, 2000.

Dawn Adams Wheelahan, New Orleans, for plaintiff.

Jefferson R. Tillery (Jones, Walker), New Orleans, David L. Hartsell (Kilpatrick Stock-ton), Atlanta, GA, Amelia W. Koch (Locke, Liddell), New Orleans, for defendant.

### ORDER AND REASONS

BERRIGAN, District Judge.

Before the Court are Plaintiff Peggy Malbrough's Motion to Sever Individual Action and for Summary Judgment (Rec.Doc. 247), Defendants Equifax, Inc.'s ("Equifax") and Equifax Credit Information Services, Inc.'s ("ECIS") (sometimes referred to collectively as "the Equifax defendants") Motion for Summary Judgment (Rec.Doc. 267), and Defendant CSC Credit Services, Inc.'s ("CSC") Motion for Summary Judgment (Rec.Doc. 280). For the reasons explained below, the Court GRANTS Plaintiff Peggy Malbrough's Motion to Sever but DENIES her Motion for Summary Judgment and GRANTS the Motions for Summary Judgment filed by the Defendants.

### I. FACTS

In 1997, Mrs. Malbrough, along with five other named representative plaintiffs, filed a class action complaint against Defendants CSC, Equifax, and ECIS.[1] The Plaintiffs alleged that the Defendants, consumer reporting agencies and their affiliates,[2] had violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*,

 by furnishing credit reports to insurers [specifically State Farm Insurance Company ("State Farm")] for the impermissible purpose[3] of claims investigating; by failing to maintain reasonable procedures designed to limit the furnishing of credit reports to the purposes listed under subsection 15 U.S.C. [§ ]1681b; and [3] by failing to require that prospective users of credit reports certify the purposes for which the information is sought and that

---

1. Equifax is the parent corporation of ECIS, a corporation that gathers and compiles credit information. CSC is a corporation that contracts with ECIS to provide subscribers access to ECIS's credit information databases.

2. There is no dispute that the Defendants are "consumer reporting agencies" as defined by the FCRA, specifically 15 U.S.C. § 1681a(f), and that they are thus governed by the provisions of the statute.

3. The FCRA requires that "[e]very consumer reporting agency shall maintain reasonable procedures designed to avoid violations of section 1681e of this title and *to limit the furnishing of consumer reports to the purposes listed under section 1681b of this title.*" 15 U.S.C. § 1681e(a) (emphasis added).

the information would be used for no other purpose.

Complaint, Rec. Doc. 1, at ¶ 6.

This Court later certified a class under Federal Rule of Civil Procedure 23(b)(2), *see Washington v. CSC Credit Services, Inc.*, 178 F.R.D. 95, 103 (E.D.La.1998) (Rec.Doc. 47), and alternatively under Rule 23(b)(3), *see Washington v. CSC Credit Services, Inc.*, 180 F.R.D. 309, 312–16 (E.D.La.1998) (Rec.Doc. 77). The final class definition was as follows:

all persons whose credit reports have been furnished to an insurance company during the period from April 2, 1995 to the present, by computer access, by defendants CSC Services, Inc., or Equifax, Inc., or any of their subsidiaries, or by access to databases owned by any of them, where the consumer reporting agency assembling and/or furnishing the report(s) did not receive:

1) an initial blanket certification from the insurance company stating

i) a permissible purpose for which the credit report is sought,

ii) that the credit report will be used for no other purpose, and

iii) that the insurance company is expressly prohibited from sharing the credit report or providing it to anyone else, other than the subject of the report or a joint user having the same purpose, and

2) a separate certification from the insurance company for each credit report requested stating that the report was only to be used for a permissible purpose.

180 F.R.D. at 315–16.

The Defendants sought review of the class certification in an interlocutory appeal under 28 U.S.C. § 1292(b) to the United States Court of Appeals for the Fifth Circuit. The Fifth Circuit reversed certification under Rule 23(b)(2) and vacated and remanded certification under Rule 23(b)(3). *See Washington v. CSC Credit Services, Inc.*, 199 F.3d 263 (5th Cir.2000). The appellate court reversed certification under Rule 23(b)(2) because it found (1) that injunctive relief for private litigants was improper because the FCRA limits the power to pursue injunctive relief to the Federal Trade Commission ("FTC"), *see id.* at 268; and (2) that declaratory relief was improper because it "would frustrate the FCRA's limitation of injunctive relief to the FTC" and because declaratory relief does not predominate over monetary relief in this case, *id.* at 269. More germane to the instant motion, the Fifth Circuit vacated certification under Rule 23(b)(3) and remanded the case to this Court because it found that "the actionable harm the FCRA envisions is improper disclosure, not the mere risk of improper disclosure that arises when 'reasonable procedures' are not followed and disclosures are made." *Id.* at 267. Accordingly, the appellate court held that a plaintiff bringing a claim that a reporting agency violated the FCRA's "reasonable procedures" requirement must first show that the reporting agency released the report in violation of the FCRA.[4] *See id.*

After the Fifth Circuit issued its opinion and rulings, the Plaintiffs informed this Court that they intended to petition the United States Supreme Court for a writ of certiorari to appeal the Fifth Circuit's decision.[5] The Plaintiffs then moved this Court to stay proceedings on this case during the pendency of the petition and possible Supreme Court appeal. *See* Rec. Doc. 245. Soon thereafter, Plaintiff Peggy Malbrough filed the instant motion to sever her individual action from the class action and for summary judgment on her individual claim.

## II. ANALYSIS

Mrs. Malbrough contends that her claim is proper for individual adjudication after the

---

**4.** Specifically, in this case, the Plaintiffs allege that the Defendants violated the FCRA by releasing their credit reports for an impermissible purpose, namely claims investigating.

**5.** The Plaintiffs thereafter filed a petition for a writ of certiorari on April 6, 2000. The petition

bears the Supreme Court file number 99–1623 and is now pending before the Supreme Court. The Defendants have reproduced the Plaintiffs' petition as Exhibit A to their reply brief filed April 28, 2000.

Fifth Circuit's ruling because her claim differs from those of the other plaintiffs such that the issues of common fact supporting class action adjudication do not apply to her individual complaint. Mrs. Malbrough claims, as do the other plaintiffs, that the Defendants released her report for the purpose of claims investigating, but she further claims, unlike the other plaintiffs, that she never gave written consent to any insurance company to obtain her credit report. Thus, she argues, she has proved that the Defendants released her credit report without her consent for an impermissible purpose in violation of 15 U.S.C. § 1681b. She further claims that the Defendants failed to employ reasonable procedures, as required by 15 U.S.C. § 1681e, to prevent the improper disclosure of her credit report. Therefore, she contends that she has proven her case as required by the Fifth Circuit's ruling.

The Defendants [6] oppose Mrs. Malbrough's motion to sever and for summary judgment and have filed a cross-motion for summary judgment on these same issues. First, the Defendants argue that the Court should decline to rule on Mrs. Malbrough's motion during the pendency of the class's petition for a writ of certiorari because the Court's decision of certain issues [7] now would unfairly prejudice the Defendants in dealing with the continuing litigation. In the alternative, if the Court should decide to consider Mrs. Malbrough's motion, the Defendants urge first that Mrs. Malbrough's credit report was never released and second that their procedures to guard against improper disclosures are reasonable.

As explained below, the Court finds that Mrs. Malbrough does have a right to sever her action at this time. However, the Court finds that the Defendants released neither Mrs. Malbrough's credit report nor her "consumer report" nor did they release a joint report for her and her husband.[8] Accordingly, no genuine issue of material fact remains, and thus the Court can rule as a matter of law in favor of the Defendants. Because the Court does not need to move beyond the initial inquiry of whether the Defendants violated the provisions of the FCRA by releasing a credit report for an impermissible purpose,[9] the Court does not need to examine whether the Defendants' procedures are reasonable. The Defendants' fears of prejudice to continuing litigation by a ruling in an individual case on the reasonableness of their procedures before the Supreme Court's ruling are thus unnecessary.

### A. MOTION TO SEVER

■ Mrs. Malbrough asserts that she has a due process right to sever her individual claim and opt-out of the proposed class action, thus allowing her to proceed with her claim individually while the proposed class action is still pending. The Court finds that it would be proper to sever Mrs. Malbrough's claim from the claims of her co-plaintiffs and that, if a class still existed, Mrs. Malbrough would have a right to opt-out of the class action under the Federal Rules of Civil Procedure.

The Fifth Circuit's opinion, as explained above, vacated and remanded this Court's certification of a class under Rule 23(b)(3). The Fifth Circuit held that a plaintiff asserting an unreasonable procedures claim must first demonstrate that a consumer reporting agency violated a provision of the FCRA, for example, release for an impermissible purpose as is alleged in this case. The information before this Court purports that the other proposed representative plaintiffs in this case

---

**6.** While CSC has filed a motion for summary judgment separately from the Equifax defendants, the arguments propounded by both motions are essentially the same.

**7.** Namely, the reasonableness of the Defendants' procedures to protect against disclosures of credit reports for impermissible purposes.

**8.** Mrs. Malbrough's husband, Roy Malbrough, is also a named representative plaintiff in the proposed class action.

**9.** Actually, the Court does not even reach this threshold inquiry because it finds that Mrs. Malbrough's credit report, or her "consumer report" as statutorily defines, was never released and that she has no standing to challenge the release of her husband's credit report without her consent.

signed waivers allowing the release of their credit reports to State Farm. The FCRA permits release of a consumer's credit report, even if for an otherwise impermissible purpose, where the consumer gives written permission to release the report. *See* 15 U.S.C. § 1681b(a)(3). Therefore, the other plaintiffs have a seemingly insurmountable problem proving a violation of the FCRA, which the Fifth Circuit held to be a prerequisite to a claim against a reporting agency for failure to maintain reasonable procedures.

Mrs. Malbrough's claim, however, is different. She claims that a document listing her husband's name primarily and her name secondarily and including the couple's joint accounts [10] was "her" credit report or, alternatively, was a document in which she had independent privacy rights under the FCRA. Mrs. Malbrough did not consent to the release of that document, which was ultimately used for the impermissible purpose of insurance claims investigating.[11] Therefore, under the Fifth Circuit's two-part inquiry, Mrs. Malbrough, if all of the above were proven, would be able to proceed from (1) the initial examination of whether the Defendants violated a substantive provision of the FCRA in releasing the document to (2) the ultimate issue of whether the Defendants maintain reasonable procedures to guard against impermissible disclosures. Then, if the procedures were proven unreasonable, Mrs. Malbrough could move on to a determination of damages.

■ Mrs. Malbrough's claim, in light of the Fifth Circuit's required two-part inquiry, is therefore factually distinct from the common claim of the other plaintiffs. In such a case, where the claims of one of a purported class's representative plaintiffs are not "typical of the claims or defenses of the class," that plaintiff should not be included as a representative or even a member of the class. Fed.R.Civ.P. 23(a)(3). Accordingly, that plaintiff's claims should be severed from those of the class and handled separately.

*See, e.g., Aguirre v. Bustos,* 89 F.R.D. 645, 648 (D.N.M.1981) (severing one proposed class representative where he was differently situated from and his interests were thus partially at odds with the other proposed representatives). *See also Greene v. Mobil Oil Corp.,* 66 F.Supp.2d 822, 823 (E.D.Tex. 1999) (severing original representative plaintiffs from later added plaintiffs in order to guard against delay and prejudice in complex action); *Young v. Pierce,* 544 F.Supp. 1010, 1026 (E.D.Tex.1982) (severing action because not all the plaintiffs would have standing in consolidated class action and observing that "[s]everance of claims is particularly appropriate when, by so doing, the nature of the actions in question is substantially clarified and the interests of the parties are thereby served").

■ However, presently there is no class in this case following the Fifth Circuit's reversal of the 23(b)(2) class and vacation of the 23(b)(3) class. If the Supreme Court denies the Plaintiffs' petition or if the Supreme Court grants the petition and ultimately affirms the Fifth Circuit, the instant action will presumably proceed before this Court as a multi-plaintiff civil action. Therefore, the rules applicable to normal non-class civil actions would apply to the case. Rule 21 provides for addition and subtraction of parties and for severance of claims. *See* Fed. R.Civ.P. 21. A "[d]istrict [c]ourt has discretion under ... [Rule] 21 in deciding whether to allow the dropping of parties." *Anderson v. Moorer,* 372 F.2d 747, 750, n. 4 (5th Cir. 1967). *See also Bolling v. Mississippi Paper Co.,* 86 F.R.D. 6, 8 (N.D.Miss.1979) ("the determination of a motion to sever is within the discretion of the court"). Moreover, "when a plaintiff who attempts to maintain a class action as a representative also states a sufficient individual claim against [a] defendant [or multiple defendants], the ... [individual] claim may be severed and proceeded with separately, even though the class action

---

**10.** The joint account notation did not identify with whom Mr. Malbrough held the accounts. The Court will address this fact below.

**11.** Whether the FCRA permits release of credit reports for the purpose of insurance claims in-

vestigating is not at issue here. Therefore, the Court will assume, for purposes of this opinion only, that the purpose for which the report was ultimately used was impermissible without some written waiver by the consumer.

may have to be dismissed." 7 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1689 (1986).

The Court finds the situation quoted immediately above particularly applicable to Mrs. Malbrough's claims. Accordingly, the Court exercises its discretion under Rule 21 and finds that it is proper at this time to sever Mrs. Malbrough's claims from those of her co-plaintiffs. Her claims, as explained above, are now distinct from those of the other plaintiffs. Furthermore, the nature of the difference renders Mrs. Malbrough's claims ready for adjudication while her co-plaintiffs await the Supreme Court's decision on their petition. It is thus proper to sever Mrs. Malbrough's individual action to avoid undue delay in adjudicating her factually distinct individual claim.[12]

■ The Defendants argue that severance and independent consideration of Mrs. Malbrough's claims could severely prejudice their interests in the continuing litigation of the claims of the other plaintiffs and/or some class that is eventually certified. The Defendants justifiably fear this Court reaching the reasonable procedures inquiry here in this case and determining that the Defendants did not employ reasonable procedures. Subsequent plaintiffs, either those in this action as a class or individually or those in another action, could then use that ruling offensively, under the doctrine of issue preclusion (collateral estoppel), to prove that the Defendants do not employ reasonable procedures to prevent improper disclosures of credit reports.[13] The Defendants, in urging this Court to prevent Mrs. Malbrough from prejudicing their continuing interests, cite the Supreme Court's seminal case on the issue of non-mutual offensive issue preclusion[14] for the proposition that a trial court has "broad discretion" to determine when to employ the doctrine. *See Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 331, 99 S.Ct. 645, 651, 58 L.Ed.2d 552 (1979). The Defendants contend that this Court should heed the Supreme Court's advice in *Parklane* and thereby refuse even to allow Mrs. Malbrough the opportunity to attempt to gain a favorable ruling that could possibly be used later by other plaintiffs.

The Court accepts the Defendants' arguments and understands their concerns.

---

**12.** Mrs. Malbrough also asserts that she has a due process right to opt-out of the class and proceed to an independent decision of her claim. This proposition of law, however, is not so clearly established. It is clear that Rule 23(c)(2) requires notice to a 23(b)(3) class that plaintiffs may opt-out. *See* Fed.R.Civ.P. 23(c)(2)(A). On the other hand, whether a plaintiff in a 23(b)(3) action, or any class action asserting predominantly monetary damages, has a constitutional due process right to opt-out is an issue the Supreme Court has specifically declined to consider. *See Ticor Title Insurance Co. v. Brown,* 511 U.S. 117, 114 S.Ct. 1359, 128 L.Ed.2d 33 (1994) (per curiam) (declining to reach the constitutional issue because it was possibly merely hypothetical). *See also Adams v. Robertson,* 520 U.S. 83, 88–89, 117 S.Ct. 1028, 1030, 137 L.Ed.2d 203 (1997) (per curiam) (declining to reach the issue because it was not properly presented); *Zachery v. Texaco Exploration and Production, Inc.,* 185 F.R.D. 230, 244 (W.D.Tex.1999) (noting that there has been no definitive "decision as to whether the tenets of procedural due process would require an opt-out procedure in cases where monetary damages predominate").

This Court does not need to reach the issue here however because, following the Fifth Circuit's opinion, there is no class in this class. Even if there were a class, Mrs. Malbrough's individual claim is clearly a predominantly monetary claim falling under Rule 23(b)(3). Thus, as a potential 23(b)(3) class member, Rule 23(c)(2) would afford her the opportunity to opt-out of the proposed class. Accordingly, the Court would not need to reach the constitutional issue.

**13.** Her co-plaintiffs are asking the Supreme Court to consider and overturn the Fifth Circuit to permit, among other things, a cause of action against the Defendants for failure to maintain reasonable procedures to prevent disclosure for impermissible purposes without first requiring a showing of a violation of the FCRA. If her co-plaintiffs are successful, Mrs. Malbrough's claim would not be so different from the others as explained above. Therefore, the Court presumes that gaining a favorable ruling on the reasonable procedures issue is Mrs. Malbrough's primary reason for severing her claim now even while her co-plaintiffs are petitioning the Supreme Court to reconsider the Fifth Circuit's opinion and while the action is stayed in this Court, per the Plaintiffs' request, pending the result of the certiorari petition.

**14.** Non-mutual offensive issue preclusion is essentially where one not a party nor privy to a prior action uses a ruling in that prior action offensively to one's advantage to preclude consideration of the same issue in a later case.

However, the Court also finds that Mrs. Malbrough's claims, due to their distinct nature from those of her co-plaintiffs, should be severed. Nevertheless, for the reasons stated below, the Court does not reach and therefore does not consider the reasonable procedures inquiry.

### B. *MOTIONS FOR SUMMARY JUDGMENT*

#### 1. Standard of Review

A district court can grant a motion for summary judgment only when the " 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mutual Automobile Ins. Co.*, 784 F.2d 577, 578 (5th Cir.1986). The court must find "[a] factual dispute ... [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party ... [and a] fact ... [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Technologies, Inc.*, 882 F.2d 993, 996 (5th Cir.1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)).

"If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First National Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir.1995) (citing *Celotex*, 477 U.S. at 322–24, 106 S.Ct. at 2552–53, and Fed. R.Civ.P. 56(e)). The mere argued existence of a factual dispute will not defeat an otherwise properly supported motion. *See Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

"If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249–50, 106 S.Ct. at 2511 (citations omitted).

#### 2. The Document At Issue

Mrs. Malbrough claims that the Defendants released her consumer report without her consent to State Farm,[15] a subscriber to CSC's credit reporting services, for an impermissible purpose, namely insurance claims investigation. The Defendants have reproduced the document at issue as Exhibit 2 to the Affidavit of Janet Mullins. Mrs. Malbrough argues (1) that this document is her credit report because it contains her name and social security number as well as accounts held jointly by her husband and herself; (2) that the document, by virtue of listing her accounts and her name and social security number, qualifies as a "consumer report" under the FCRA; and (3) that, regardless of her name and social security number appearing on the document, she has a cognizable privacy interest in the document because the document lists her accounts and the party that accessed the document used it for an impermissible purpose. The Court however finds that none of these arguments support Mrs. Malbrough's claim.

##### a. *Assessment of the Document*

■ The Equifax defendants have produced evidence through the sworn affidavit of Janet Mullins, a Manager in ECIS's Office of Consumer Affairs, to explain the contents of the document Mrs. Malbrough claims is her credit report. Mrs. Malbrough has produced no evidence to refute Ms. Mullins's explanations of the technical intricacies of the document. Accordingly, because the Court has no reason to question Ms. Mullins's expertise in reading and explaining the document, the Court accepts as true the explanations Ms. Mullins provides.

The document produced is an individual credit report. The "NM" code at the top of the document demonstrates that State Farm

---

**15.** As a subscriber, State Farm obtains desired credit information by entering identifying information on its computer terminals and thereby accessing ECIS's databases.

requested an individual credit report[16] for the name immediately following the code.[17] The name "Roy Malbrough," Mr. Malbrough's address, and his social security number all follow the "NM" code at the top of the document. The document also lists his wife's name after his name and his wife's social security number after his. State Farm, rather than any of the Defendants supplied this information. On an individual, or "NM" code, request, the subscriber enters identifying information to access the desired credit report on ECIS's database. The subscriber then enters several pieces of identifying information, which may include, among other things, the individual's name, address, and social security number as well as the individual's spouse's name and social security. All of this information, including the information regarding the spouse, aids the database in identifying the credit report for the correct individual rather than another individual with the same name. The top portion of the document therefore is only a record of the information State Farm entered on its terminal to access ECIS's database and not part of the credit report that follows. Accordingly, the document is not Mrs. Malbrough's credit report simply because her name and social security number appear at the top of the document.

The actual credit report itself, which follows the inputted identification information, is Mr. Malbrough's individual credit report and contains no information about Mrs. Malbrough herself. The credit report begins with Mr. Malbrough's personal information, including his name, address, social security number, date of birth, and employment history. None of this information appears for Mrs. Malbrough. If the document was also

Mrs. Malbrough's credit report, all of this information would also appear. The report then lists all accounts in which Mr. Malbrough is an account holder. The report includes joint accounts, but it does not indicate the identity of the joint account holder.[18] Thus, there is no information on the report to indicate that Mrs. Malbrough jointly holds any of the listed accounts with her husband. Therefore, the mere inclusion of joint accounts in which Mrs. Malbrough is a joint holder without any indication of her interest in those accounts does not render the credit report "her" report.

CSC's undisputed billing record for State Farm's request that produced the document further supports the individual nature of the report. CSC's computer-generated invoice confirms that State Farm only accessed Mr. Malbrough's individual report. The invoice accordingly shows that CSC billed State Farm only for access to an individual credit report.

### b. *FCRA's Definition of "Consumer Report"*

■ Mrs. Malbrough argues that, even accepting all of the above, the document at issue still qualifies as Mrs. Malbrough's "consumer report" under the FCRA's definition of that term. The FCRA defines "consumer report" as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living ..." 15 U.S.C. § 1681a(d)(1). The facts set forth above demonstrate that the document at issue does not fit within this definition. Mrs. Malbrough's name and social security number within the information inputted by State

16. The code "NJ," on the other hand, identifies that a subscriber is accessing the reports of two individuals who share joint credit. The term "joint report," as used by Mrs. Malbrough, is in fact a misnomer. An "NJ" report includes two full reports of the individuals who share joint credit.

17. Mrs. Malbrough has submitted evidence, namely the deposition of State Farm Claims Superintendent William Brandner reproduced as Plaintiff's Exhibit 9 to her Motion to Sever and for Summary Judgment, that State Farm intended to view the credit report of both Mr. and Mrs.

Malbrough when it entered the request that produced the document in question. State Farm's objective however does not bear on what the Defendants actually disclosed and thus is irrelevant to the question before the Court.

18. Ms. Mullins's affidavit informs the Court that it is ECIS's standard practice not to include the name of any joint account holder on an individual's credit report in order to avoid improper invasion of the joint holder's privacy interests. *See* Mullins Aff., at ¶ 10.

Farm along with Mr. Malbrough's actual credit report's listing of his jointly held accounts with no indication of the joint holder fail to transform Mr. Malbrough's individual credit report into Mrs. Malbrough's "consumer report" as defined by the statute. Accordingly, the Court finds that the document at issue is not Mrs. Malbrough's consumer report.

### c. Standing to Assert Claim on Release of Spouse's Report

■ Mrs. Malbrough also contends that, even if her name and social security number were not on the document, she has a legally cognizable privacy interest in the document because (1) it lists her accounts; and (2) the party that accessed the document used it for an impermissible purpose. Mrs. Malbrough cites various cases that she argues support her contention. Those cases, and others the Court has found on its own, have held that a wife has standing to bring suit against a consumer reporting agency for failure to follow reasonable procedures to assure the maximum possible accuracy of information in her husband's consumer report only where the release of inaccurate information in the husband's report negatively affected the wife's credit worthiness.[19] See Koropoulos v. Credit Bureau, Inc., 734 F.2d 37, 45–47 (D.C.Cir.1984); Barron v. Trans Union Corp., 82 F.Supp.2d 1288, 1296–97 (M.D.Ala. 2000); Oppenheimer v. Guzco Guarantee de Puerto Rico, 977 F.Supp. 549, 551–52 (D.P.R. 1997); Williams v. Equifax Credit Information Services, 892 F.Supp. 951, 954–55 (E.D.Mich.1995); Conley v. TRW Credit Data, 381 F.Supp. 473, 474 (N.D.Ill.1974).[20]

In this case, Mrs. Malbrough challenges the Defendants' procedures in allegedly permitting access to her husband's consumer report for an impermissible purpose. Using the cases cited above as precedent, Mrs. Malbrough would have standing to bring such a challenge only if she also demonstrated that the release caused damage to her credit worthiness. Mrs. Malbrough, however, has demonstrated no damages whatsoever as a result of the release. The cited cases therefore do not support Mrs. Malbrough's claim. Furthermore, the portion of the Fifth Circuit's opinion reversing and vacating this Court's 23(b)(3) class certification clearly demonstrates that an FCRA plaintiff must initially prove some cognizable FCRA violation before attacking a consumer reporting agency's procedures as unreasonable. Therefore, the Fifth Circuit's reasoning only further supports the proposition that Mrs. Malbrough lacks standing to challenge the procedures used to protect her husband's report without first demonstrating some damage to her own credit worthiness.

### 3. Resulting Status of FCRA Claim

Mrs. Malbrough's claims therefore must fail because the undisputed evidence demonstrates that the Defendants never released her credit report. That evidence also shows that the document at issue is not her "consumer report" as defined by the FCRA. Furthermore, the rule established in previous cases addressing spousal standing in FCRA cases denies Mrs. Malbrough such standing in this case.

Because the Defendants never released Mrs. Malbrough's report and because she has no standing to challenge the release of her husband's report, the Court does not even reach the initial inquiry of the Fifth Circuit's test—whether the report was released in violation of the FCRA. The Court accordingly cannot address the issue of whether the Defendants maintain reasonable procedures to prevent release of consumer reports in violation of the FCRA and cannot consider any damages that may be due if the Defendants' procedures were found to be lacking.

### III. CONCLUSION

After a thorough review of the briefs submitted by the parties and the evidence there-

---

**19.** The same principles of course would apply if a husband brought such a challenge. The Court however has found no such case reported.

**20.** The Conley case possibly required an even more detailed showing because the court specifi-

cally noted that the report at issue in that case included information on the wife, namely "the nature and duration of the wife's employment as well as her compensation." 381 F.Supp. at 474.

in, the case file, and the applicable law, the Court has reached the following conclusions: (1) that it is proper at this time to allow Mrs. Malbrough to sever her claims from those of her co-plaintiffs and to proceed independently to judgment on her claims; and (2) that no genuine issue of material fact exists to prevent judgment as a matter of law in favor of all of the Defendants on Mrs. Malbrough's individual claims.

Accordingly, the Court **ORDERS** the following:

(1) Plaintiff Peggy Malbrough's Motion to Sever is hereby **GRANTED,** but her Motion for Summary Judgment is hereby **DENIED;**

(2) The Motions for Summary Judgment of Defendants Equifax, Inc. and Equifax Credit Information Services, Inc. and of Defendant CSC Credit Services, Inc. are hereby **GRANTED;** and

(3) Therefore, Plaintiff Peggy Malbrough's claims are hereby **DISMISSED WITH PREJUDICE.**

