**Revised February 22, 2000**

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

_____

No. 98-31209

_____

BERNITA WASHINGTON; KEVIN WASHINGTON; PEGGY MALBROUGH; ROY MALBROUGH, JR; BERNICE AUGUSTINE GUICHARD; VERNON GUICHARD, JR,

Plaintiffs - Appellees,

versus

CSC CREDIT SERVICES INC; EQUIFAX CREDIT INFORMATION SERVICES INC,

Defendants - Appellants.

Appeal from the United States District Court
for the Eastern District of Louisiana

January 7, 2000

Before KING, Chief Judge, and REYNALDO G. GARZA and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Plaintiffs-appellees Bernita and Kevin Washington (the "Washingtons"), Peggy and Ray Malbrough (the "Malbroughs"), and Bernice and Vernon Guichard (the "Guichards") (collectively, the "consumers") allege that defendants-appellants CSC Credit Services, Inc. ("CSC") and Equifax Inc. ("Equifax") (collectively, the "reporting agencies") violated the Fair Credit Reporting Act

("FCRA" or "the Act"). The district court certified the consumers as class representatives and the reporting agencies challenge this ruling. We reverse in part, vacate in part, and remand.

**I**

The consumers brought suit against the reporting agencies for failing to "maintain reasonable procedures" before providing their credit reports to insurance companies. They seek statutory, compensatory, and punitive damages, as well as attorney fees and prejudgment interest. Additionally, they request declaratory and injunctive relief "ordering defendants to desist from providing credit reports to insurers in connection with claims investigations."

The district court initially certified the class under Federal Rule of Civil Procedure 23(b)(2). *See Washington v. CSC Credit Servs., Inc.*, 178 F.R.D. 95, 103 (E.D. La. 1998). The court subsequently denied Equifax's motion for reconsideration, but in doing so, the court amended the class definition[1] and alternatively certified the class under Rule 23(b)(3). *See Washington v. CSC Credit Servs., Inc.*, 180 F.R.D. 309, 312-16 (E.D. La. 1998).

**II**

---

[1]    The final class definition was:
all persons whose credit reports have been furnished to an insurance company during the period from April 2, 1995 to the present, by computer access, by defendants CSC Services, Inc., or Equifax, Inc., or any of their subsidiaries, or by access to databases owned by any of them, where the consumer reporting agency assembling and/or furnishing the report(s) did not receive:
1) an initial blanket certification from the insurance company stating
      i) a permissible purpose for which the credit report is sought,
      ii) that the credit report will be used for no other purpose, and
      iii) that the insurance company is expressly prohibited from sharing the credit report or providing it to anyone else, other than the subject of the report or a joint user having the same purpose, and
2) a separate certification from the insurance company for each credit report requested stating that the report was only to be used for a permissible purpose.
*Washington v. CSC Credit Servs., Inc.* 180 F.R.D. 309, 315-16 (E.D. La. 1998).

We have jurisdiction over this interlocutory appeal under 28 U.S.C. § 1292(b). We review the district court's decision to certify the class for an abuse of discretion. *See Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 408 (5th Cir. 1998). However, we review *de novo* whether the district court applied the correct legal standard to grant certification. *See id.*

To proceed as a class, plaintiffs must first meet the four requirements set forth in Rule 23(a): "(1) the class is so numerous that joinder of all members is impracticable [numerosity], (2) there are questions of law or fact common to the class [commonality], (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [typicality], and (4) the representative parties will fairly and adequately protect the interests of the class [adequacy]." Fed. R. Civ. P. 23(a). Then, the plaintiffs must show that the action is maintainable as a class action under one of Rule 23(b)'s subsections. *See generally Castano v. American Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996) (noting that plaintiffs have the burden of showing that certification is appropriate).

The district court found that the consumers satisfied the Rule 23(a) prerequisites and certified the class under both Rule 23(b)(2) and 23(b)(3). To maintain a class action under Rule 23(b)(3), plaintiffs must show: (1) that "[c]ommon questions . . . predominate over any questions affecting only individual members" ("predominance"); and (2) that "class resolution [is] superior to other available methods for the fair and efficient adjudication of the controversy" ("superiority"). *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 623-24 (5th Cir. 1999) (internal quotations omitted) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615, 117 S. Ct. 2231, 2246, 138 L. Ed. 2d 689, __ (1997)). To maintain a class action under Rule 23(b)(2), plaintiffs must show that the "predominant relief sought is injunctive or declaratory." *Allison*, 151 F.3d at 411.

The reporting agencies argue that the consumers do not have individual standing to bring

FCRA claims, do not meet the "typicality" and "commonality" requirements of Rule 23(a), cannot maintain an action under Rule 23(b)(3) because they cannot show "superiority" or "predominance," and cannot maintain an action under Rule 23(b)(2) because the FCRA does not allow them to obtain injunctive relief. Resolution of these arguments depends on whether the district court properly interpreted the FCRA.

**A**

Enacted in 1970, the FCRA governs "consumer reporting agencies" like Equifax and CSC which maintain credit information on consumers and provide it to third parties. *See* 15 U.S.C. § 1681 (stating the purpose of the FCRA); *id.* § 1681a(f) (defining "consumer reporting agencies"). A central purpose of the Act is to ensure the "confidentiality, accuracy, relevancy, and proper utilization of [consumers' credit] information." *Id.* § 1681(b).

Section 1861b of the Act specifies the two instances in which a reporting agency may provide consumer reports to an insurance company: (1) when the consumer consents in writing; and (2) when the agency "has reason to believe" that the insurance company "intends to use the information in connection with the underwriting of insurance involving the consumer." *Id.* § 1681b(a). To ensure that agencies do not provide reports outside these two circumstances, § 1681e(a) requires reporting agencies to "maintain reasonable procedures designed . . . to limit the furnishing of consumer reports to the purposes listed under section 1681b of this title." *Id.* § 1681e(a);[2] *see also* 16 C.F.R. pt. 600

---

[2]     In its entirety, § 1681e(a) states:
Every consumer reporting agency shall maintain reasonable procedures designed to avoid violations of section 1681c of this title and to limit the furnishing of consumer reports to the purposes listed under section 1681b of this title. These procedures shall require that prospective users of the information identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose. Every consumer reporting

app. § 607 (stating FTC commentary on "reasonable procedures").

The crucial issue in this case is whether a plaintiff can bring an action for failure to "maintain [the] reasonable procedures" required by § 1681e(a) without first showing that a report was disclosed in violation of § 1681b. The district court found that a plaintiff claiming a violation of § 1861e does not need to show improper disclosure in violation of § 1681b, but instead only needs to show that the reporting agency did not maintain the required reasonable procedures and that it released a report to an insurance company. *See Washington*, 178 F.R.D. at 99-100.

The only other two courts which have considered this issue disagree with the district court's interpretation of § 1861e. In *Andrews v. Trans Union Corp.*, 7 F. Supp. 2d 1056 (C.D. Cal. 1998), the court found that where a "disclosure was made for a permissible purpose [under § 1681b], then the inquiry ends, and no investigation of the reasonableness of the consumer reporting agency's procedures are necessary." *Id.* at 1067. The court reasoned that "[i]t makes no sense for a consumer whose file was disclosed only for permissible purposes to nevertheless be able to challenge the reasonableness of the consumer reporting agency's procedures." *Id.* Similarly, in *Middlebrooks v. Retail Credit Co.*, 416 F. Supp. 1013 (N.D. Ga. 1976), the court endorsed the proposition that, "once it is shown that the information was relevant and for a permissible purpose, this court need not inquire into the reasonableness of the underlying procedures adopted by the agency to assure that the information will be furnished for purposes defined as permissible under the Act." *Id.* at 1016.

---

agency shall make a reasonable effort to verify the identity of a new prospective user and the uses certified by such prospective user prior to furnishing such user a consumer report. No consumer reporting agency may furnish a consumer report to any person if it has reasonable grounds for believing that the consumer report will not be used for a purpose listed in section 1681b of this title.

*Id.* Section 1681c, which is not at issue in this case, mandates that certain material be included in reports and excludes other material from reports.

We find these cases persuasive. Section 1681e(a) requires reporting agencies to "maintain reasonable procedures designed . . . to limit the furnishing of consumer reports to the purposes listed under section 1681b." 15 U.S.C. § 1681e(a). As the above-cited courts reason, this purpose is not furthered unless a plaintiff suffers the harm the procedures are meant to prevent.

Similarly, Congress has stated that it adopted the "reasonable procedures" requirement to "meet[] the needs of commerce for consumer credit . . . in a manner which is fair and equitable to the consumer, with regard to the *confidentiality, accuracy, relevancy, and proper utilization* of such information." 18 U.S.C. § 1681(b) (emphasis added). Congress identified actual injuries—including breaches of "confidentiality" and "[im]proper utilization"—which only occur if there is an improper disclosure, suggesting that a general claim of improper procedures is by itself inadequate. *Id.*

In light of the purposes of the FCRA, we find that the actionable harm the FCRA envisions is improper disclosure, not the mere *risk* of improper disclosure that arises when "reasonable procedures" are not followed and disclosures are made. Accordingly, a plaintiff bringing a claim that a reporting agency violated the "reasonable procedures" requirement of § 1681e must first show that the reporting agency released the report in violation of § 1681b.[3]

---

[3] This reading finds support in cases interpreting a related part of § 1681e. Section 1681e(b) also has a "reasonable procedures" provision, requiring agencies "to assure maximum possible accuracy of the information concerning the individual about whom the report relates." *Id.* § 1681e(b). Courts applying § 1681e(b) uniformly limit recovery to cases where the failure to follow procedures causes actual harm (*i.e.*, release of an inaccurate report) to the consumer. *See Peller v. Retail Credit Co.*, [1974-1980 Transfer Binder] Consumer Cred. Guide (CCH) ¶ 94,648 (N.D. Ga. Dec. 6, 1973) ("[I]n order to pursue a cause of action based upon a willful or negligent violation of 15 U.S.C. § 1681e(b), the report sought to be attacked must be inaccurate. "), *aff'd* No. 74-1284 (5th Cir. Dec. 10, 1974)*; Spence v. TRW, Inc.*, 92 F.3d 380, 382 (6th Cir. 1996) (rejecting a claim of failure to follow "reasonable procedures" under 1681e(b) because "[a] showing of inaccuracy is an essential element of a claim under the Fair Credit Reporting Act"); *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) ("In order to make out a prima facie violation under § 1681e(b), a consumer must present evidence tending to show

-6-

The consumers cite no contrary authority interpreting § 1681e. Instead, they make a plain language argument, quoting language from the civil liability provisions of the FCRA which holds reporting agencies liable for "failing to comply with any requirement imposed under this subchapter." 15 U.S.C. §§ 1681n, 1681o. The consumers argue that because maintaining reasonable procedures is a requirement under § 1681e(a), the FCRA imposes liability for a failure to comply with this requirement. We disagree. The language in § 1681e(a) indicates—by qualifying the purpose of the procedural requirement—that the "requirement imposed under" § 1681e(a) is maintaining "reasonable procedures" *in order to prevent improper disclosures*. *See, e.g.*, *id.* § 1681e(a) ("No consumer reporting agency may furnish a consumer report to any person if it has reasonable grounds for believing that the consumer report will not be used for a purpose listed in section 1681b of this title.").

**B**

In sum, the district court erroneously ruled that the consumers need not show that their reports were improperly disclosed under § 1861b in order to maintain their claims under § 1861e. This error requires us to vacate in part the certification ruling, as the error formed the basis for the district court's findings that the consumers have individual standing, that they satisfy the prerequisites

---

that a credit reporting agency prepared a report containing inaccurate information."); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (same); *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991) (same); *Koropoulos v. Credit Bureau, Inc.*, 734 F.2d 37, 39 (D.C. Cir. 1984) (same). These cases actually read the "reasonable procedures" requirement as a limit on liability that might otherwise attach for inaccurate reports, rather than as an affirmative basis for a claim. *See, e.g.*, *Henson*, 29 F.3d at 284 ("[T]he credit reporting agency is not automatically liable even if the consumer proves that it prepared an inaccurate credit report because the FCRA does not make reporting agencies strictly liable for all inaccuracies. A credit reporting agency is not liable under the FCRA if it followed 'reasonable procedures to assure maximum possible accuracy,' but nonetheless reported inaccurate information in the consumer's credit report.") (quotations and citation omitted).

of Rule 23(a), and that they can maintain a class under Rule 23(b)(3).  However, we reverse the part of the district court's decision certifying the class under Rule 23(b)(2), because we find that the consumers cannot maintain a class action under this subsection.  *See* Fed. R. Civ. P. 23(b)(2) (allowing a class action where "final injunctive relief or corresponding declaratory relief with respect to the class as a whole" is appropriate).

**1**

The district court certified this action under Rule 23(b)(2) primarily because the consumers are pursuing injunctive relief.  The reporting agencies argue that the FCRA does not allow private litigants to obtain injunctive relief.

In general, "[a]bsent the clearest command to the contrary from Congress, federal courts retain their equitable power to issue injunctions in suits over which they have jurisdiction."  *Sierra Club, Lone Star Chapter v. FDIC*, 992 F.2d 545, 548 (5th Cir. 1993) (alteration in original) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 705, 99 S. Ct. 2545, 2559, 61 L. Ed. 2d 176, __ (1979)).  Thus we must consider whether Congress "clearly and unambiguously limited the court's equity jurisdiction" under the FCRA.  *Id.*

Section 1681p gives us jurisdiction over "[a]n action to enforce any liability created under this subchapter."  15 U.S.C. § 1681p.  T he term "liability" is discussed in the FCRA's civil liability provisions, both of which expressly refer to damages and attorney fees without mentioning injunctive relief.  *See* 15 U.S.C. §§ 1861n-1861o.  This omission is significant because the Act elsewhere expressly grants the power to obtain injunctive relief to the FTC.  *See id.* § 1861s(a) ("Compliance with the requirements imposed under [the FCRA] shall be enforced under the Federal Trade

Commission Act . . . by the Federal Trade Commission."); 15 U.S.C. § 45(b) (stating, in a provision of the FTC Act, that the FTC can compel parties to "cease and desist" from committing certain acts); *cf. id.* § 1861s(b) (allowing other agencies to enforce the FCRA in certain circumstances).

Lower courts are split as to whether, in light of these provisions, the FCRA allows private litigants to maintain a claim for injunctive relief. *Compare Bumgardner v. Lite Cellular, Inc.*, 996 F. Supp. 525, 526-27 (E.D. Va. 1998) (holding that it lacked the power to grant a private litigant's request for injunctive relief under the FCRA); *Ditty v. Checkrite, Ltd.*, 973 F. Supp. 1320, 1338 (D. Utah 1997) (same); *Mangio v. Equifax, Inc.*, 887 F. Supp. 283, 284-85 (S.D. Fla. 1995) (same); *Kekich v. Travelers Indem. Co.*, 64 F.R.D. 660, 668 (W.D. Pa. 1974) (same) *with Andrews*, 7 F. Supp. 2d at 1084 & n.33 (concluding that the FCRA "does allow injunctive relief on the plaintiff's own behalf"); *Greenway v. Information Dynamics, Ltd.*, 399 F. Supp. 1092, 1096-97 (D. Ariz. 1974) (certifying a class action on a claim for injunctive relief under the FCRA and granting preliminary injunctive relief), *aff'd on other grounds* 524 F.2d 1145 (9th Cir. 1975). We hold that the affirmative grant of power to the FTC to pursue injunctive relief, coupled with the absence of a similar grant to private litigants when they are expressly granted the right to obtain damages and other relief, persuasively demonstrates that Congress vested the power to obtain injunctive relief solely with the FTC.[4]

---

[4]     Courts have adopted a similar reading of analogous provisions of the Fair Debt Collection Practices Act ("FDCPA"). The FDCPA contains a similar civil liability provision to the FCRA, mentioning money damages but not injunctive relief, *see* 15 U.S.C. § 1692k, and it contains a similar provision regarding the FTC's enforcement authority, *see id.* § 1692l. Based on these two sections, courts applying the FDCA have held that it does not allow private actions for injunctive relief. *See Sibley v. Fulton DeKalb Collection Serv.*, 677 F.2d 830, 834 (11th Cir. 1982) (stating in *dictum*, without analysis, that "equitable relief is not available to an individual under the civil liability section of the Act"); *Zanni v. Lippold*, 119 F.R.D. 32, 33-34 (C.D. Ill. 1988) (finding that the FDCPA did not allow individual litigants to obtain injunctive relief);

This reading is supported by the subsequently-enacted § 1861u, which requires reporting agencies to disclose consumer information to the FBI "for counterintelligence purposes." 15 U.S.C. § 1681u. Section 1861u provides consumers with a damages remedy against the government for improperly obtaining information, *see id.* § 1681u(i), and it specifies that, "[i]n addition to any other [damages or attorney fees] remedy contained in this section, injunctive relief shall be available to require compliance with the procedures of this section," *id.* § 1681u(m). Thus, where Congress intended to allow private injunctive relief under the FCRA, it expressly stated that this relief was available. This language would be unnecessary if injunctive relief were otherwise available.[5] *See Kashanchi v. Texas Commerce Medical Bank, N.A.*, 703 F.2d 936, 939 (5th Cir. 1983) (noting the importance of giving effect to all language in a statute).

**2**

The district court alternatively found that the consumers could maintain a class action under Rule 23(b)(2) for declaratory relief because the reporting agencies acted in a way which made "injunctive relief or corresponding declaratory relief" appropriate. Fed. R. Civ. P. 23(b)(2). The Advisory Committee states that "[d]eclaratory relief 'corresponds' to injunctive relief when as a

---

*Strong v. National Credit Management Co.*, 600 F. Supp. 46, 46-47 (E.D. Ark. 1984) (same); *Duran v. Credit Bureau of Yuma*, 93 F.R.D. 607, 608-09 (D. Ariz. 1982) (same).

[5] The district court made a similar argument in support of its contrary ruling by citing § 1681s-2, which imposes a duty on "furnishers of information" to provide accurate information to consumer reporting agencies. *See id.* § 1681s-2(a). Section 1681s-2(d) grants the FTC exclusive enforcement power over this subsection. The district court apparently relied on the lack of similar language in § 1681e to argue that Congress could not have intended the FTC to have exclusive enforcement authority over § 1681e. We agree with this reasoning, but it does not address the question at issue here, which is not whether the FTC has exclusive enforcement authority over all of § 1681e (which it plainly does not), but rather whether the FTC has the exclusive ability to obtain one type of remedy (injunctive relief) available under § 1681e.

-10-

practical matter it affords injunctive relief or serves as a basis for later injunctive relief." Fed. R. Civ. P. 23 advisory committee's note. The district court reasoned that declaratory relief in this case fit within this definition because it could "serve[] as a basis for later injunctive relief" to the FTC. *Washington*, 180 F.R.D. at 312.

This application of Rule 23(b)(2) would frustrate the FCRA's limitation of injunctive relief to the FTC. Unable to obtain injunctive relief directly, consumers could attempt to obtain it indirectly by obtaining declaratory relief solely for the purpose of later prompting the FTC to move for injunctive relief.

More importantly, to maintain an action under Rule 23(b)(2), declaratory relief rather than monetary damages must be the "predominant" form of relief the plaintiffs pursue. *See Allison*, 151 F.3d at 411. "[M]onetary relief predominates in (b)(2) class actions unless it is incidental to requested injunctive or declaratory relief." *Id.* at 415. This means that monetary damages must "flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief" and must not depend "on the intangible, subjective differences of each class member's circumstances" or "require additional hearings to resolve the disparate merits of each individual's case." *Id.* The consumers are seeking actual and punitive damages. It is counterintuitive to say that in their case, declaratory relief, which might hypothetically be used as the basis for future action by the FTC, "predominates" over monetary relief, which will directly and immediately benefit them. Additionally, because the money damages in this case do not flow from the declaratory relief but require separate adjudication, they predominate under *Allison*. Accordingly, the district court erred in finding that the class could be maintained under Rule 23(b)(2).

**III**

-11-

Because we find that the consumers cannot maintain a class action under Rule 23(b)(2), we REVERSE the district court's certification on this grounds. Additionally, because the district court's class certification under Rule 23(b)(3) was based on its misreading of the FCRA, we VACATE its Rule 23(b)(3) certification and REMAND for further proceedings consistent with this opinion.