**Scott D. LEWIS, Plaintiff,**

v.

**OHIO PROFESSIONAL ELECTRONIC NETWORK LLC, et al.,
Defendants.**

**No. C2–00–1131.**

United States District Court,
S.D. Ohio,
Eastern Division.

March 7, 2003.

Syliva M. Antalis, Murray & Murray, Sandusky, OH, Brian K. Murphy, Murray, Murphy, Moul & Basil, Columbus, OH, for plaintiff.

Andrew J. Dorman, Brian T. McElroy, Janik & Dorman, Cleveland, OH, for defendants.

## *ORDER AND OPINION*

MARBLEY, District Judge.

### I. Introduction

This matter is before the Court on Defendant Ohio Professional Electronic Network LLC and Buckeye State Networks LLC's Motion for Summary Judgment filed with the Court on January 7, 2003.

For the following reasons, Defendants' Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part.

### II. Facts

Because this matter is before the Court on Defendants' Motion for Summary Judgment, the Court will consider the facts in the light most favorable to Plaintiff.

### A. Plaintiff's Erroneous Criminal Background

In 1989, the Stark County, Ohio, Sheriff's Department arrested Timothy Lockhart. When booking Mr. Lockhart, an employee of the Stark County Sheriff's Department inadvertently entered the last four digits of Mr. Lockhart's telephone number as the last four digits of his social security number. The social security number used for booking Mr. Lockhart in fact belonged to Plaintiff Scott D. Lewis. Therefore, Mr. Lockhart's criminal record was linked to Plaintiff. Mr. Lockhart's criminal record included felony convictions for driving while under the influence of alcohol and an arrest for murder. This incorrect information remained linked to Plaintiff from 1989 through 2000.

In March 1998, Plaintiff was employed by Three Rivers Option Care ("Three Rivers"). He began pursuing an opportunity with HillMed Home Medical Systems ("HillMed"), and he alleges that after an initial interview with Michelle Martin, an employee at HillMed, he was all but promised a job at HillMed. After several telephone calls to HillMed to follow through on his interview, other HillMed employees informed Plaintiff that he would not be hired and that HillMed regarded him as an "unsavory character." Subsequently, Three Rivers forced Plaintiff to resign, citing poor performance, although Plaintiff had recently received positive reviews. Three Rivers had learned that Plaintiff had considered a job with HillMed and been denied.

## B. Defendants

Defendant Michigan Sheriff's Association ("MSA") began to create a computer network in 1989 for sharing information regarding bookings, arrests, and releases in county jails. MSA formed a not-for-profit corporation, Defendant Michigan Sheriffs' Jail Linkage System ("MSJLS"), to implement a data processing system, which was ultimately developed to store up to hundreds of pieces of information about each person in the database.

In 1991, the MSJLS computer network expanded to include Ohio sheriffs. The project became a joint venture of M.S.A. § and Defendant Buckeye State Sheriffs' Association ("BSSA"). MSJLS moved its offices and data center from Lansing, Michigan to Columbus, Ohio. In 1994, MSJLS began to make what it determined to be "Public Arrest Data" available to the general public. Among the pieces of information made available to the public were inmates' full names, dates of birth, social security numbers, dates and times of bookings, and dates, times, and reasons for release.

In January 1998, MSJLS entered into an Information Services Agreement with Defendant Ohio Professional Electronic Network ("OPEN"), which provided OPEN with access to MSJLS information. In May 1998, MSJLS entered into an Exclusive Distributorship Agreement with Buckeye State Networks, LLC ("BSN"), which made BSN the exclusive distributor of MSJLS data to private sector users. OPEN and others seeking access to the publicly available information in MSJLS's database had to access the information through BSN.

## III. Procedural History

Plaintiff Scott D. Lewis ("Plaintiff") filed his Complaint with this Court on September 27, 2000. Later, Plaintiff filed an Amended Complaint on December 13, 2000 and finally filed his Second Amended Complaint on August 17, 2001. In his Second Amended Complaint, Plaintiff alleged numerous violations of the Fair Credit Reporting Act ("FCRA" or the "Act"), 15 U.S.C. § 1681. The Second Amended Complaint named the following defendants: Ohio Professional Electronic Network LLC ("OPEN"), Buckeye State Networks, L.L.C. ("BSN"), The Buckeye State Sheriff's Association ("BSSA"), The Michigan Sheriff's Association ("MSA"), Michigan Sheriffs' Jail Linkage System ("MSJLS"), Arresting Info, Inc., Intellicorp, Ltd., and Fact Finders Corporation.

In an Order and Opinion issued March 27, 2002, this Court considered three motions for summary judgment. *See Lewis v. Ohio Prof'l Elec. Network LLC,* 190 F.Supp.2d 1049 (S.D.Ohio 2002). BSSA, MSA, and MSJLS moved for summary judgment arguing that they are not consumer reporting agencies under the FCRA and are therefore not subject to the Act. The Court found that in fact BSSA and M.S.A. § were not subject to the FCRA and granted summary judgment as to those two defendants. *Id.* at 1057. The Court found, however, that MSJLS was a consumer reporting agency and denied its motion for summary judgment. *Id.* at 1058–61. Plaintiff moved for summary judgment seeking a ruling that OPEN and BSN are consumer reporting agencies and therefore subject to the FCRA. The Court decided that although OPEN and BSN are not consumer reporting agencies, they are nevertheless subject to the FCRA as resellers of consumer information. *Id.* at 1062–63. Finally, the Court denied OPEN and BSN's motion for summary judgment because the Court found that a genuine issue of material fact existed concerning whether these defendants provided inaccurate information to HillMed or Three Rivers that negatively impacted Plaintiff's employment opportunities. *Id.* at 1064.

Earlier, on October 23, 2001, Plaintiff dismissed Fact Finders Corporation from the case pursuant to a Notice of Voluntary Dismissal. On May 24, 2002, Plaintiff voluntarily dismissed without prejudice defendants Arresting Info, Inc. and Intellicorp, Ltd. More recently, MSJLS was dismissed from the case on January 30, 2003 pursuant to a Stipulation of Dismissal of Claims. Therefore, the only remaining defendants are OPEN and BSN (collectively, "Defendants"). Defendants OPEN and BSN filed a Motion for Summary Judgment on January 7, 2003. The Court must now consider that motion.

### IV. Standard of Review

Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.,* 12 F.3d 1382, 1388–89 (6th Cir.1993). In response, the nonmoving party must present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.,* 8 F.3d 335, 339–40 (6th Cir.1993). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the nonmoving party).

### V. Analysis

Defendants advance four grounds for summary judgment. First, Defendants ask the Court to dismiss all of Plaintiff's claims based on provisions of the FCRA that apply only to consumer reporting agencies because the Court has held that Defendants are only resellers of consumer information, not consumer reporting agencies. Second, Defendants contend that all of Plaintiffs claims based on actions before September 26, 1998 and after February 28, 2000 are time-barred. Third, Defendants argue that Plaintiff has failed to carry his burden of production to present evidence of causation showing that his inability to find employment was caused by erroneous information supplied by Defendants. Fourth, Defendants argue that a private plaintiff cannot receive injunctive relief under the FCRA, and ask the Court to dismiss all of Plaintiffs claims seeking injunctive relief.

### A. Defendants' Liability as Resellers Under the FCRA

In its earlier summary judgment Order, the Court found that Defendants are resellers of consumer information under the FCRA but are not consumer reporting agencies. *Lewis,* 190 F.Supp.2d at 1062–63. Defendants therefore seek summary judgment on all of Plaintiff's claims because none of them is based on 15 U.S.C. § 1681e(e), which is the section of the FCRA that applies to resellers of consumer information. Plaintiff emphasizes that § 1681e(e) requires Defendants to employ numerous reasonable procedures to ensure the privacy of consumers. Plaintiff further argues that § 1681e(e) serves as a conduit through which certain additional sections of the FCRA apply to Defendants as resellers of consumer information.

Section 1681e(e) has two major provisions. First, § 1681e(e)(1) requires a reseller of consumer information to disclose the following information to the consumer reporting agency that provides the reseller with the information:

(A) the identity of the end-user of the report (or information); and

(B) each permissible purpose under section 1681b of this title for which the report is furnished to the end-user of the report (or information).

15 U.S.C.A. § 1681e(e)(1) (West 1998). Second, § 1681e(e)(2) further requires that a person who resells consumer information shall:

(A) establish and comply with reasonable procedures designed to ensure that the report (or information) is resold by the person only for a purpose for which the report may be furnished under section 1681b of this title, including by requiring that each person to which the report (or information) is resold and that resells or provides the report (or information) to any other person—

(i) identifies each end user of the resold report (or information);

(ii) certifies each purpose for which the report (or information) will be used; and

(iii) certifies that the report (or information) will be used for no other purpose; and

(B) before reselling the report, make reasonable efforts to verify the identifications and certifications made under subparagraph (A).

15 U.S.C.A. § 1681e(e)(2). Because these are the only provisions of the FCRA that apply to resellers of consumer information, the Court finds that the basis for Defendants' liability is limited to these provisions.

■ None of Plaintiff's claims against Defendants, however, is based on these provisions of the FCRA. First, Plaintiff's Second Amended Complaint alleges that Defendants failed to follow the requirements of § 1681e(b), which requires that "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." § 1681e(b). Plaintiff argues that although this provision applies to consumer reporting agencies, it is applied to resellers of consumer information through § 1681e(e)(2)(A). Although § 1681e(e)(2)(A) uses the term "reasonable procedures," it does not incorporate the same requirements as § 1681e(b). Section 1681e(e)(2)(A) does not require resellers of information to use reasonable procedures to assure accuracy of information, but rather requires them to use reasonable procedures to ensure that reports are sold only for purposes permitted by the FCRA. § 1681e(e)(2)(A). Plaintiff makes no allegation in his complaint that Defendants failed to follow reasonable procedures to ensure that his consumer information was used only for permissible purposes.

■ Second, Plaintiff's Second Amended Complaint alleges that Defendants violated § 1681g(a)(3)(A), which requires that a consumer reporting agency shall "disclose to the consumer ... identification of each person (including each end-user identified under section 1681e(e)(1) of this title) that procured a consumer report—(i) for employment purposes, during the 2–year period preceding the date on which the request is made ...." § 1681g(a)(3)(A). Plaintiff argues that § 1681e(e)(1) applies this section to resellers of consumer information. But § 1681e(e)(1) does not impose an obligation on resellers of consumer information to disclose any information to consumers. Rather, § 1681e(e)(1) requires that resellers of consumer information disclose the "identity of the end-user"

of the information to the consumer reporting agency from which the reseller procures the information. § 1681e(e)(1)(A). The burden is placed on the consumer reporting agency to disclose the information to the consumer upon request. § 1681g. Therefore, Plaintiff's claim pursuant to § 1681g(a)(3)(A) does not apply to Defendants because they are only resellers of consumer information.

■■■■ Third, Plaintiff's Second Amended Complaint alleges that Defendants violated § 1681i, which requires consumer reporting agencies to reinvestigate disputed information in a consumer's file. Fourth, Plaintiff's Second Amended Complaint alleges that Defendants violated § 1681k, which requires a consumer reporting agency to notify a consumer when the agency compiles information from public records that "are likely to have an adverse effect upon a consumer's ability to obtain employment." § 1681k. But both § 1681i and § 1681k apply explicitly to consumer reporting agencies, not resellers of consumer information. Plaintiff does not even argue that any provision of § 1681e(e) makes these sections applicable to resellers. Therefore, neither of these final two claims is applicable to Defendants.

Despite the fact that Plaintiff did not originally plead any claims against Defendants based on the reseller provisions of § 1681e(e), Plaintiff now argues that Defendants are liable under § 1681e(e)(1) for failing to employ a system to disclose to MSJLS the identity of end-users of consumer information about Plaintiff. Pursuant to Federal Rule of Civil Procedure 15(b), the Court treats this claim as if it had been raised in the pleadings, conforming Plaintiff's original claims to the evidence and the law of the case.

Defendants argue that they satisfied their obligation under § 1681e(e)(1) by disclosing to MSJLS the names of the end-users of consumer information. But the evidence shows that Defendants did not have in place a system to track what information was given to each end-user of Defendants' service. Instead, Defendants are only able to identify all of their clients. These clients were permitted to perform searches of the database for a fee, but Defendants had no ability to track what information their clients obtained from the database. During oral argument, Defendants argued that they do not have a duty to report information about the background searches their clients perform using their system. Rather, Defendants argue that their only duty is to disclose the identity of their clients, the end-users.

■■■■ The Court does not read § 1681e(e)(1) so narrowly. Instead, § 1681e(e)(1)(A) requires Defendants to disclose to MSJLS the "identity of the end-user of the report [(or any information in the report)]." § 1681e(e)(1)(A). By referring to "*the* report," the Court reads the statute to mean that each individual report about each individual consumer must be tracked and the end-user of the report disclosed to the consumer reporting agency. Furthermore, § 1681g(a)(3)(A) makes this even clearer in that it requires consumer reporting agencies to disclose to consumers "identification of each person *(including each end-user identified under section 1681e(e)(1) of this title)* that procured a consumer report" for particular purposes. § 1681g(a)(3)(A) (emphasis added). It would be impossible for a consumer reporting agency to disclose to a particular individual a list of all end-users who accessed his consumer information unless resellers disclosed this information to the consumer reporting agency pursuant to § 1681e(e)(1). Providing a consumer with a list of all of a consumer reporting agency's clients' clients would do little to satisfy the requirements of § 1681g(a)(3). The consumer would potentially be provided with a bewilderingly lengthy list of end-

users, only some of whom actually accessed his consumer information.

Defendants also argue that Plaintiff does not have standing to assert a claim under § 1681e(e)(1) because the disclosure duty under that section is to MSJLS, not to Plaintiff. Although Defendants' duty under § 1681e(e)(1) is to disclose information to MSJLS, not directly to Plaintiff, this duty is for Plaintiff's benefit. It is therefore a duty Defendants owe to Plaintiff. Sections 1681n and 1681o impose liability on "any person" for failure "to comply with any requirement" of the FCRA "with respect to any consumer." These sections impose liability not just on consumer reporting agencies, but on "any person" who fails to comply with the FCRA. Therefore, Plaintiff's action against Defendants for violation of § 1681e(e)(1) is proper.

### B. Statute of Limitations

Defendants posit three arguments why certain of Plaintiff's claims are time barred or barred by the statute of limitations.

Defendants first argue that Plaintiff cannot sustain any claims based on Defendants' conduct before September 30, 1997 because § 1681e(e) was not effective until that date. Indeed, Congress passed § 1681e(e) as part of the Consumer Credit Reporting Reform Act of 1996, which did not become effective until September 30, 1997. Pub.L. No. 104–208, §§ 2407, 2420(a), 110 Stat. 3009. Therefore, to the extent that any of Plaintiff's claims are based on Defendants' conduct before September 30, 1997, they are dismissed.

Next, Defendants argue that Plaintiff cannot allege any claims based on conduct after February 28, 2000 because the errors on Plaintiff's consumer report had been fixed by that date. Plaintiff's remaining claim, however, is based on the disclosure requirements of § 1681e(e)(1) for resellers. Plaintiff's claim is not based on the inaccuracies of the report, because

Defendant had no duty to ensure the report's accuracy. Therefore, the fact that the errors on Plaintiff's consumer report had been fixed does not absolve Defendants of liability under the FCRA for their inability to disclose the names of end-users of Plaintiff's reports or information.

Finally, Defendants argue that Plaintiff's claims are barred by the FCRA's two-year statute of limitations. Defendants contend that any of Plaintiff's claims based on conduct before September 27, 1998 are therefore barred because Plaintiff filed his Complaint in this case on September 27, 2000. Therefore, Plaintiff's claims based on his employment problems with Three Rivers and HillMed in March 1998 would be barred by the statute of limitations. Plaintiff argues that his claims are based on Defendants' inability to disclose required information, and that because he made his request for disclosure in 2000, his claims are not time barred.

Section 1681p sets forth the following statute of limitations:

> An action to enforce any liability created under this subchapter may be brought ... within two years from the date on which the liability arises, except that where a defendant has materially and willfully misrepresented any information required under this subchapter to be disclosed to an individual and the information so misrepresented is material to the establishment of the defendant's liability to that individual under this subchapter, the action may be brought at any time within two years after discovery by the individual of the misrepresentation.

§ 1681p. The "discovery rule," which serves to toll the statute of limitations until discovery of injury, applies under the FCRA only in the limited circumstances described in § 1681p. *TRW Inc. v. Andrews*, 534 U.S. 19, 28, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001) ("We conclude that the

text and structure of § 1681p evince Congress' intent to preclude judicial implementation of a discovery rule."). Under § 1681p, the discovery rule applies only where material information has been willfully misrepresented to a plaintiff to whom the defendant had an obligation to disclose the information. § 1681p; *Andrews*, 534 U.S. at 22, 122 S.Ct. 441.

█ Therefore, the FCRA's discovery rule is inapplicable in this case. As the Court has already decided, Defendants did not have an obligation to disclose any information to Plaintiff, and therefore, could not have willfully misrepresented any information to him. Rather, Defendants only disclosure obligations as resellers were to the consumer reporting agencies that provided Defendants with consumer information. § 1681e(e)(1). Plaintiff argues that the disclosure requirements of § 1681g apply to resellers via § 1681e(e)(1). The Court has already rejected this argument.[1] *Supra* at 699.

Because the discovery rule is inapplicable in this case, the two-year statute of limitations set forth in § 1681p governs. Therefore, all of Plaintiff's claims based on conduct before September 27, 1998 are barred. This includes Plaintiff's claims based on his employment problems with Three Rivers and HillMed. The Court therefore **GRANTS** Defendants summary judgment on all of Plaintiff's claims against Defendants to the extent that they are based on conduct before September 27, 1998.

### C. Causation

Defendants argue that Plaintiff has failed to present any evidence that information contained in any of their consumer reports caused Plaintiff to lose his job or be unable to secure new employment. Defendants present evidence that neither HillMed nor Three Rivers ever ordered a criminal background check on Plaintiff, and therefore, their adverse employment decisions concerning Plaintiff could not have been based on an inaccurate credit report.

█ To prevail on a claim for actual damages under the FCRA, Plaintiff must prove that Defendants' violation of the Act caused him injury. *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001) ("Without a causal relation between the violation of the statute and the loss of credit, or some other harm, a plaintiff cannot obtain an award of 'actual damages,' which is one of the remedies under the Fair Credit Reporting Act." (citations omitted)). The FCRA does not explicitly require Plaintiff to establish injury; therefore, other forms of damages such as attorneys' fees and punitive damages may be available even if Plaintiff cannot prove a causal link between Defendants' violations of the act and Plaintiff's other damages. *Id.*

Plaintiff does not dispute that he must prove causation for at least some of his damages.[2] The Court will consider each

---

1. The Court need not consider whether Defendants "materially and willfully misrepresented any information" to Plaintiff because they did not have an obligation to disclose information to Plaintiff. If the Court were to consider this issue, however, there appears to be no evidence that Defendants willfully failed to disclose any information to Plaintiff. To the extent that they failed to disclose information, they did so because they did not have records of the requested information. Although they may have wilfully failed to keep

necessary records, § 1681p only tolls the statute of limitations for willfully failing to disclose information, not for willfully keeping inadequate records.

2. Plaintiff first argues that the Court has already denied Defendants summary judgment on the issue of causation in its March 27, 2002 Order and Opinion. In that Order, the Court found that summary judgment was not appropriate on the issue of causation at that time because discovery had not been complet-

kind of damages the Plaintiff alleges he suffered from Defendants' violations of the FCRA, and determine whether there is a genuine issue of material fact regarding whether Defendants' violation of the FCRA caused this damage.[3]

The FCRA permits recovery for actual damages and attorneys' fees based on a negligent violation of the Act, § 1681o, and if Defendants willfully failed to comply with the FCRA, Plaintiff can also recover statutory damages and punitive damages, § 1681n(a). Actual damages may "include recovery for emotional distress and humiliation." *Guimond v. Trans Union Credit Info. Co.,* 45 F.3d 1329, 1333 (9th Cir.1995). Plaintiff alleges that he suffered three kinds of actual damages: (1) inability to find employment, (2) emotional distress and humiliation, and (3) prelitigation attorneys' fees. Plaintiff also seeks punitive damages alleging that Defendants willfully violated the FCRA by failing to report information about the end-users of the consumer reports they sold.

### 1. Actual Damages—Inability to Find Employment

Plaintiff argues that he was forced to resign from Three Rivers and denied employment with HillMed and numerous other employers because of the incorrect consumer information that Defendants circulated about him. Defendants present evidence that neither HillMed nor Three Rivers ever ordered a criminal background check on Plaintiff, and therefore, their adverse employment decisions concerning Plaintiff could not have been based on an inaccurate credit report. Wendy Graham, the corporate secretary and director of human resources for HillMed, testified that HillMed used Employment Screening Services, Inc. for background checks in 1998. (Graham Dep. at 19.) Barbara Lindsey, the president and CEO for HillMed, testified that HillMed never conducted a background check on Plaintiff and never interviewed him for a job. (Lindsay Dep. at 20–21.) Elise Miller, the owner and president of Three Rivers, testified that she was not aware of Plaintiff's negative background check information when he was asked to resign from Three Rivers.

Plaintiff does not present any evidence directly to refute Defendants' evidence that officials at both Three Rivers and HillMed deny ever ordering a background check on Plaintiff. Rather, Plaintiff argues that the credibility of the officials at Three Rivers and HillMed is called into question based on some of their other deposition testimony and prior statements. For example, Plaintiff argues that Elise Miller of Three Rivers has made inconsistent statements about the quality of Plaintiff's work at Three Rivers. Regarding HillMed, Plaintiff argues that although HillMed officials deny ever interviewing Plaintiff, there is evidence that a HillMed

---

ed yet and Plaintiff had presented sufficient facts at that time to preclude summary judgment. *Lewis,* 190 F.Supp.2d at 1064. The parties have conducted additional depositions since then, however, including the three depositions upon which Defendants rely for their contention that they did not provide a consumer report that damaged Plaintiff. Therefore, the Court's earlier decision on this issue is not binding at this time.

**3.** On pages 11–12 of his Memorandum, Plaintiff argues that "proof of causation varies depending on a defendant's particular violation of the FCRA." Plaintiff goes on to say that the alleged violation of the FCRA in this case is unlike the normal violation of the FCRA because Defendants failed to follow the guidelines of the FCRA at all. This seems like an odd argument in that Plaintiff argues that the required proof of causation should be less stringent because of the gravity of Defendants' violation of the Act. The Court reads Plaintiff's argument to simply mean that even if he is unable to prove causation for one kind of damages, he may still be able to prove causation for some other form of damages.

official did conduct interviews at a Ruby Tuesday where Plaintiff claims he was interviewed.

 None of Plaintiff's evidence, however, directly refutes the testimony that Three Rivers and HillMed never ordered a background check on Plaintiff. But the Court does not need to decide whether there is a genuine issue of material fact on this issue. Instead, Plaintiff's claims seeking damages for his employment difficulties with Three Rivers, HillMed, and other employers are dismissed for other reasons. First, Defendants, as resellers and not consumer reporting agencies, are not responsible under the FCRA for inaccuracies in Plaintiff's consumer report. Rather, their only duty is to disclose the identity of end-users of Plaintiff's report. § 1681e(e)(1). Only consumer reporting agencies have a duty to use reasonable procedures to ensure accurate reports. § 1681e(b). Plaintiff cannot allege that he was unable to find employment or lost his job because Defendants failed to keep proper records of end-users. Failure to keep those records did not cause the inaccuracies in Plaintiff's report that allegedly caused him to have problems finding a job.

Second, Plaintiff's claims that he lost his job with Three Rivers and was unable to find a job with HillMed are barred by the two-year statute of limitations as discussed *supra*.

### 2. Actual Damages—Emotional Distress and Humiliation

As an independent basis for recovery, Plaintiff seeks actual damages for emotional distress and humiliation stemming from Defendants' failure to properly record and report the names of end-users of Plaintiff's consumer information. Plaintiff contends that his inability to identify the end-users of information about him has resulted in ongoing emotional distress. Defendants argue that because Plaintiff is unable to prove that any of its consumer reports were issued to Plaintiff's employers or prospective employers, Plaintiff is also unable to prove that an inaccurate report caused him emotional distress or humiliation. Defendant cites *Bryant v. TRW, Inc.*, 487 F.Supp. 1234 (E.D.Mich.1980), for the proposition that emotional distress damages are only awarded in the Sixth Circuit when a plaintiff can prove that adverse credit reports were issued about him. But although the court in *Bryant* upheld a jury verdict where adverse credit reports had been issued about the plaintiff, it did not make any ruling about when emotional distress damages would or would not be appropriate. *Id.*

 Plaintiff's own testimony that he suffered emotional distress and humiliation as a result of inaccurate information in his consumer reports is sufficient evidence to create a genuine issue of material fact on this issue. Defendants' alleged failure to follow the requirements of the FCRA caused this emotional distress because Plaintiff is unable to identify all the end-users who may have obtained consumer reports about him. Defendants present no evidence to demonstrate that Plaintiff has not suffered emotional distress. Therefore, there is a genuine issue of material fact about whether Plaintiff suffered emotional distress because of Defendants' alleged violations of the FCRA.

### 3. Actual Damages—Prelitigation Attorneys' Fees

 Plaintiff also seeks an award of actual damages for prelitigation attorneys' fees for the attorneys he hired to resolve his consumer history woes. "Actual damages" under the FCRA may include such

prelitigation attorneys' fees if the attorneys' services are retained to remedy a violation of the law. *Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 474 (2d Cir.1995). "The rationale behind this rule is that a consumer should not have to retain an attorney in order to force compliance with the statute." *Id.* If Plaintiff prevails on a claim that Defendants violated the FCRA, he would be entitled to such attorneys' fees because he hired attorneys for the purpose of remedying a violation of the FCRA. Defendants did not respond to this issue.

### 4. Attorneys' Fees and Punitive Damages

▮ Plaintiff also seeks attorneys' fees and punitive damages. If Plaintiff ultimately prevails on his claim under the FCRA that Defendants violated § 1681e(e)(1), he is entitled to attorneys' fees, and Defendants do not dispute this issue. § 1681o(a)(2); § 1681n(a)(3). Defendants ask the Court for summary judgment on the issue of punitive damages arguing that Plaintiff presents no evidence of willful misconduct. But if Plaintiff were to prevail on a claim that Defendants failed to keep proper records and report information about end-users of consumer information, a reasonable jury could conclude that Defendants acted in willful disregard of the FCRA. Therefore, there is a genuine issue of material fact concerning punitive damages.

### D. Injunctive Relief

Defendants argue that private litigants cannot seek injunctive relief under the FCRA. The Fifth Circuit has decided that a private plaintiff cannot seek injunctive relief under the FCRA. *Washington v. CSC Credit Servs. Inc.*, 199 F.3d 263, 268 (5th Cir.2000). In *Washington*, the court noted that district courts across the country are split on this issue. *Id.* at 268. The parties have not cited a Sixth Circuit case on this issue. The Seventh Circuit, however, appears to believe that injunctive relief is available to a private plaintiff, although not deciding the issue directly. *See Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir.2001) (noting that a private plaintiff could obtain injunctive relief against a private defendant although the plaintiff suffered no actual damages). Because the Court's decision on this Motion for Summary Judgment does not depend on whether Plaintiff can obtain injunctive relief, the Court will defer this issue until it is actually in a position to grant injunctive relief.

### VI. Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part. Summary judgment is **GRANTED** on all of Plaintiff's claims based on provisions of the FCRA other than 15 U.S.C. § 1681e(e)(1) and all of Plaintiff's claims to the extent that they arose before September 27, 1998. Summary judgment is **DENIED** with respect to Plaintiff's claims based on 15 U.S.C. § 1681e(e)(1).

**IT IS SO ORDERED.**